Gunby v. Brown.

GUNBY, *Appellant*, v. BROWN, *Public Administrator,* et al.

| 86 | 253 |
|---|---|
| 36a | 161 |
| 86 | 253 |
| 39a | 339 |
| 86 | 253 |
| 105 | 70 |
| 86 | 253 |
| 116 | 498 |
| 86 | 253 |
| 67a | 342 |
| 86 | 253 |
| 140 | 454 |

1. **Administrator**: SALE OF REALTY TO PAY DEBTS : LIMITATION. There is no statute of limitations in this state prescribing the time within which an administrator must procure an order for the sale of real estate to pay the debts of the estate, and, such being the case, he must do so within a reasonable time.

2. ———: ———: REASONABLE TIME. What is a reasonable time must be determined from all the circumstances of the case ; each particular case, to a great extent, furnishing its own rules.

3. ———: ———. A delay of twelve or thirteen years after the granting of letters of administration *held*, under the circumstances of this case, to be inexcusable.

4. **Injunction.** Injunction will lie to prevent a sale under an order of the probate court obtained after such unreasonable delay.

*Appeal from Grundy Circuit Court.*—HON. G. D. BURGESS, Judge.

REVERSED.

*Broaddus & Wait* for appellant.

(1) Injunction will lie to prevent cloud on title. *Mechanics Bank v. The City of Kansas*, 73 Mo. 556-9, and authorities cited ; *Harrison v. Utterback*, 57 Mo. 519, and authorities ; *Vogler v. Montgomery*, 54 Mo. 579. (2) The execution and sale made under judgment in the circuit court was valid and conveyed south half of land. *Speer v. Sample*, 4 Watts (Pa.) 367 ; *Heard v. Sack*, 81 Mo. 610 ; *Union Bank v. McWharter*, 52 Mo. 34 ; *Coleman v. McNulty*, 16 Mo. 173 ; *Lewis v. Coombs*, 60 Mo. 44. (3) The deed made upon execution sale from county court, though void, was color of title. *Jackson v. McGruder*, 51 Mo. 55 ; *Hamilton v. Bogges*, 63 Mo. 233 ;

*Rannels v. Rannels,* 52 Mo. 109; *Crispen v. Hannavan,* .50 Mo. 536. (4) Color of title is evidence and notice of .adverse possession which will ripen into title. *Pillow v. Roberts,* 13 How. 472; *Wright v. Matson,* 18 How. 50. ·(5) Ten years open, notorious, adverse and hostile possession make perfect title. *Nelson v. Brodhack,* 44 Mo. .597, 600; *Allen v. Mansfield,* 83 Mo. 688; *Key v. Jennings,* 66 Mo. 356. (6) Respondent is estopped by his laches. *Dickenson v. Colgrove,* 100 U. S. 578; *Barnes v. Kay,* 7 Ind. 301; *Shaw v. Beebe,* 35 Vt. 205; *Peery v. Hall,* 75 Mo. 503; *Brown v. Brown,* 30 N. Y. .519. (7) If the administrator was guilty of neglect, then the remedy of respondent was on the bond of prior .administrator in first instance, and not against the land until that remedy was exhausted. *Felix v. Southard,* S. C. Mo. Oct. term, 1883. (8) Respondent Woodson was guilty of laches, and ought not now to be permitted to assert his claim against *bona fide* purchasers. *Lansdale v. Smith,* U. S. S. C., Oct. 1882, 16 C. L. J. 28; *Landrum v. Union Bank,* 63 Mo. 52; *Evans v. Snider,* 64 Mo. 519; *Stevenson v. Saline County,* 65 Mo. 430; *Bliss v. Pritchard,* 67 Mo. 190. This rule applies to .claims in the probate court. *Mooers v. White,* 6 John's Chan. 375; *Estate of Crosby,* 55 Cal. 574; *Gabriel v. Godfrey,* 4 Mich. 315; 66 Ill. 224; 41 Iowa, 255.

*Crosby Johnson* for respondents.

(1) The sheriff's deed to Gideon & Woolsey was made during a session of the county court, not of the circuit court, and, for that reason, was void. It could only confer color of title. (2) The other sheriff's deed was made about one month after the death of Rogers .and was, therefore, void. *Swearingen v. Adm'r,* 7 Mo. 421; *Walker v. Carson,* 16 Mo. 68; *Miller v. Doan,* 19 Mo. 650; *Hardin v. McCanse,* 53 Mo. 255; *Wernecke v. Wood,* 58 Mo. 352, and *Wernecke v. Kenyon,* 66 Mo. 547,

and *Brown v. Wood*, 64 Mo. 547, where the same doc-
trine is enunciated. Also, *Mitchell v. Maxent*, 4 Wall.
237; *Smith v. Reed*, 52 Cal. 345 ; *Wallace v. Swinton*, 64
N. Y. 188; *Cadmus v. Jackson*, 52 Pa. St. 295. In
Freeman on Execution (sec. 55), it is said that the
weight of authority is that the power to issue execution
is extinguished by the death of a sole defendant. (3) To
the proposition that ten years' adverse possession makes
perfect title there are well established exceptions. One
of the exceptions is that the limitation does not begin to
run until there is a person in existence who may contest
the right of possession with the occupant. As Angell
(Lim. sec. 54) says : "The term, cause of action, implies
not only a right of action, but that there is some person
in existence who is qualified to institute process." The
same principle is announced in *McDonald v. Walton*, 1
Mo. 726 ; *Dillon's Adm'r v. Bates*, 39 Mo. 292 ; *Polk's
Adm'r v. Allen*, 19 Mo. 467. (4) The defendants were
not guilty of laches in not seeking to obtain the order of
sale sooner. (5) Plaintiff should have resisted the order
of sale if interested in the estate and have appealed
therefrom. *Callahan v. Griswold*, 9 Mo. 784; *Shields
v. Ashley* 16 Mo. 471 ; *Langworthy v. Baker*, 23 Ill.
484 ; *Hopkins v. McCann*, 19 Ill. 484 ; *Colson v. Baker*,
1 Redf. 324 ; *Hunter v. French*, 86 Ind. A resort to
equity is not the proper mode of obtaining relief. *Casey
v. Murphy*, 7 Mo. App. 247 ; *Bailey v. Ross*, 68 Ga. 735.

BLACK, J.—A temporary injunction was awarded in
this case, restraining the defendant, public administrator
of Caldwell county, from selling the land in question
for the payment of a debt of the estate of Samuel
Rogers, deceased. On final hearing the injunction was
dissolved. Rogers owned the half section of land now
in question. He joined the confederate army in 1861,
and died in Arkansas December 23, 1862. His death
was not known in Caldwell county, the place of his resi-

dence, until after the sheriff's sale next mentioned. A judgment was rendered in the county court of that county in May, 1863, against Rogers and others on a bond of indebtedness to the school fund. Execution was issued thereon and the north half of the land sold to Woolsey and Gideon in October, 1863. A judgment was also rendered in the circuit court against Rogers in 1862, before his death, execution was issued thereon January 21, 1863, after his death, by virtue of which the sheriff sold the south half of the land to Woolsey and Gideon in October, 1863. In and prior to 1866, Murphy acquired conveyances from and through these purchasers to the entire land, and in that year the widow of Rogers also conveyed her interest in all of the land to him. These deeds were all duly recorded about their respective dates. The heirs of Rogers instituted a suit for possession of the land in the circuit court, in 1875 against Murphy, which resulted in a decree, rendered in 1876, divesting the heirs of all interest in the lands, with a general judgment against Murphy in their favor for eight hundred dollars.

In May, 1875, Murphy made a deed of trust upon the land securing a large debt and by virtue of the deed of trust the land was sold, in 1877, to the plaintiff. He has sold part of the land with covenants, to protect which and the residue of the land he prosecutes this suit and this appeal. In 1867, after both of the sheriff's sales and after Murphy took possession of the land claiming in good faith to be the owner thereof, Henkins was appointed administrator of Rogers. Nothing appears to have been done by him. In 1880 the defendant, public administrator, procured an order to sell the land to pay a debt allowed in 1869 in favor of Woodson and another, amounting to something less than two hundred dollars.

The sheriff's deed, made by virtue of the county court judgment, recites a sale at a term of the county

court, and the circuit court does not appear to have been then in session. As the sale was not made during a term of the circuit court, it is for that reason conceded to be void, and so it has been ruled. *McClurg v. Dollarhide*, 51 Mo. 347. The execution on the other judgment was issued and sale made after the death of Rogers. Generally such sale is void. *Wernecke v. Wood*, 58 Mo. 352 ; *Brown v. Woody*, 64 Mo. 547, and authorities there cited. Whether this deed could be upheld on the doctrine of *Lewis v. Coons*, 60 Mo. 44, we need not stop to consider. In the view we take of this case it is not necessary to further consider this question, for it, at most, only affects one-half of the land. Though these deeds were void, one on its face, still they constitute color of title. *Jackson v. McGruder*, 51 Mo. 55; *Hamilton v. Boggess*, 63 Mo. 233. Moreover, they not only define the limits of his possession, but gave character to and notice of his claim.

But assuming without deciding, that, because Murphy perfected his title by a deed from the widow, and the decree of title from the heirs, he is to be regarded as holding the title through them, and subservient to a proper administration of the estate, the question arises whether there is any limit of time within which lands may be sold for the payment of debts by an administrator, and if so, what is the limit. There is no statute which prescribes the time within which the administrator must procure an order for the sale of real estate to pay debts of the estate. Nor is there any analogy between an ordinary judgment, and an allowance by the probate court of these demands, as to the time within which they may be enforced. Nor can the statute of limitations with respect to personal actions have any application. A proceeding to sell real estate is but a step to be taken in the course of the proper administration of the estate. The Chancellor in *Movers v. White*,

6 John Ch. R. 375, said: "But I am not prepared to admit that the executor or administrator can, at any time, and in his discretion, apply for, and be *entitled* to an order for the sale of real estate; and I am of opinion, that whatever may be the merits of the present demand, the defendant, as executor, is now too late to apply for a sale of the real estate, and that his capacity for that purpose is entirely extinguished." Then, referring to the statutes, he proceeds: "I infer from them that the law intended that the executor or administrator should make his application with due diligence, and in a reasonable time, and if he does not, the judge or surrogate has, from the nature of his judicial trust, a discretion to reject the application. What is a reasonable time may be another question." This doctrine has met with approval in many of the states where there is no statute of limitations applicable to such proceedings. *Estate of Crosby*, 55 Cal. 574; *Estate of Godfrey*, 4 Mich. 315; *Woolf v. Ogden*, 66 Ill. 224; *McCrary v. Tasker*, 41 Iowa, 255.

By our law the debts must be exhibited for allowance within two years from the grant of letters of administration. If the personal estate be insufficient to pay the debts, the administrator may disclose that fact by petition and have an order for the sale of real estate. If he fail to make such application any creditor may do so, upon giving the administrator the prescribed notice. In short, the whole administration law contemplates that the affairs of the estate will be wound up as speedily as practicable. If the administrator is guilty of delay the creditors are armed with ample power to have him removed, or proceed themselves. In reason and justice there must be a limit of time in which this order of sale may be taken. As there is no statute upon the subject it must be done within a reasonable time. What that is, must in this, as in all cases where the sale is applied for, be determined from all the circumstances, and each

particular case must, to a great extent, furnish its own rule.

It may be said it was the duty of Murphy through whom the plaintiff claims, to see that the administration was closed at an earlier day. It is a circumstance worthy of consideration that he all the while claimed by a title, which, if good, was paramount and superior to the demands here in question. It must be that the administrator and creditor also supposed his title was superior. But if he is in no better position than the heirs and purchasers from them, the language used in *Estate of Crosby, supra,* is quite pertinent, which is: "Nor does the fact that the heirs do not call for an accounting in the probate court, and for sale of real estate, if necessary, constitute any excuse for the delay of the administrator or creditor. The proceeding for the sale of real property is hostile to the heirs, and there is no principle which makes it *their* duty to initiate a suit adversely to themselves, the failure to commence which by the proper party may result to their benefit."

Here the administrator was appointed in 1867. The debt was allowed in 1869. It would seem there was no personal property to be administered upon, and nothing to call for any delay. In 1874 an order was made upon the report of Herkins showing no assets, that the administration be "discontinued until such time as the court may order the same to be proceeded with." In 1877, ten years after the grant of letters, this order is set aside and Herkins was relieved and the estate ordered into the custody of the then public administrator, which order was also revoked in that year. In 1880 the estate was ordered into the hands of the defendant on motion of Woodson, the then owner of the demand, whereupon the order of sale in question was procured. Why this delay of twelve or thirteen years, when there appears to have been but a single demand, and no personal property

to administer upon? The record fails to give any satisfactory answer. The delay is inexcusable.

The sale, if made, cannot be said to be void on its face, and a deed made pursuant thereto will cloud and depreciate the plaintiff's title. The power of a court of equity to prevent this cannot be disputed. The contention is, however, that this resistance should have been made to the order of sale in the probate court and that it cannot be made elsewhere. It does not appear that the plaintiff had actual notice that such an order had been applied for. The notice is by publication. But if he was bound to take notice of such proceeding, at this late day, and could have appeared and resisted the order in the probate court, we think he may still have the remedy by injunction in the circuit court. His claim for relief addresses itself to a court of equity. The circuit court is the most appropriate tribunal to hear and determine such questions. The pleadings and procedure in the probate court are all not so well adapted to a full investigation of such equities. The circuit court has the power to grant full relief, and, under all the circumstances of this case, the plaintiff might well appeal to that court for relief.

The judgment, including that assessing damages on the bond, is reversed and the cause remanded, with directions to the circuit court to make the temporary injunction perpetual. Norton, J., dissents. The other judges concur.