RUMSEY *et al., Appellants,* v. OTIS.

Division Two, March 3, 1896.

1. **Limitations:** TENANCY BY CURTESY. The statute of limitations will not begin to run against one claiming under a wife until after the termination of her husband's tenancy by the curtesy.

2. **Deed:** DELIVERY. The delivery of a deed is essential to transfer title. although all other formalities are complied with; but no particular form is necessary to constitute a delivery.

3. ——: ——: PRESUMPTION. The law presumes much more in favor of a delivery of a deed in cases of voluntary settlements in favor of a wife, child, or near relative than in ordinary cases of bargain and sale between strangers.

4. ——: ——: PURCHASE BY HUSBAND AND CONVEYANCE: PRESUMPTION: ESTOPPEL. Where a husband purchased land and directed the deed absolute in form to be made to his wife, with the intention of passing the title, and the deed was made as directed and delivered to the agent designated by the husband to receive it, the delivery was *prima facie* to the wife, and the fact that the deed was afterward found in the possession of the husband was not sufficient to rebut the presumption of delivery to her, and the husband's claim to the land did not estop the wife or her heirs from afterward asserting title to it.

5. **Warranty of Decedent:** LIABILITY OF HEIRS AND DEVISEES. Under section 8839, Revised Statutes, 1889, abolishing lineal and collateral warranties and their incidents, and providing that heirs and devisees of persons who shall have made any covenant or agreement shall be answerable on such covenant or agreement to the extent of the lands descended or devised to them, heirs are chargeable on the covenant of their ancestor to the extent of the value of the property descended to them.

6. **Administration:** PAYMENT OF DEBTS OF DECEDENT: REFUNDING OF LEGACIES AND DISTRIBUTIONS. Section 247, Revised Statutes, 1889, providing for the refunding of legacies and distributions when required for the payment of debts of the decedent and empowering the court to apportion the same, applies to the probate court in which the estate is being administered and the orders for refunding shall be made before the final settlement of the estate.

Rumsey v. Otis.

**7. Practice:** EJECTMENT: WARRANTY OF DECEDENT: LIABILITY OF HEIRS AND DEVISEES: STAY OF JUDGMENT. Where plaintiff who was devisee of her father, after final settlement of his estate, brought an action in ejectment as heir of her mother against defendant who held under a warranty of her father, the judgment should be stayed until defendant's damages for breach of warranty had been determined, and until plaintiff, who was insolvent, had, as one of the devisees, paid her share of such damages.

*Appeal from Nodaway Circuit Court.*—Hon. C. A. ANTHONY, Judge.

REVERSED AND REMANDED.

*W. W. Ramsay* and *R. H. Wilfey* for appellants.

(1) There was a sufficient delivery of the Stringer deed so as to pass the title to Tama Otis and appellants' fourth instruction as asked should have been given. *Parker v. Parker,* 8 N. W. Rep. (Iowa) 806. That case is in many respects similar to this. There the court say: "The delivery of the deed to plaintiff with the intention that it should take effect as a conveyance operated to divest Peters of his title to the property; and as title must vest somewhere and could vest in no one except the grantee named in the deed it follows title vested in the defendant at the moment title passed from Peters." *Albright v. Albright,* 36 N. W. Rep. (Wis.) 254; 2 Wait's Action and Def., 494, 495. (2) There was no resulting trust in favor of Merrill Otis, the husband of grantee. *Deibold v. Christian,* 75 Mo. 308. (3) There being sufficient specific legacies in the will of Otis as is undisputed, appellee's claim for breach of warranty has no foundation. Sec. 247, R. S. 1889. The court in its finding of facts that the deed was never delivered to Tama Otis, nor to any one for her is contrary to all the evidence on that point and is in fact inconsistent with its

other finding that the name of grantee was changed before it was recorded and that Merrill Otis never intended this conveyance as a gift or settlement for the finding is equivalent to saying that Stringer had never passed title.   If Stringer by his deed passed title from him (and there can be no question of that), then the title passed to grantee Tama Otis.   There being no evidence that she was to hold it as trustee for her husband, the law assumed it to have been a provision for the wife, and this seems to have been Otis' idea as detailed by the witness John Busby.

*S. R. Beech* and *E. A. Vinsonhaler* for respondent.

(1)   There is no evidence of actual delivery of deed to Tama Otis or of its acceptance by her, and these are as essential as the signing.   5 Am. and Eng. Encyclopedia, page 445; *Rogers v. Carey,* 47 Mo. 232; *Moore v. Flynn,* 135 Ill. 74.   Neither was there a constructive acceptance by the husband, for the husband retained dominion over the deed and claimed the property as his, and there is no evidence that Tama Otis ever did claim it.   *Allen v. Drake,* 109 Mo.   626. At common law the wife could not take title to land without the consent of the husband.   1 Washburn on Real Est. [4 Ed.] 334.   While such assent will be presumed if advantageous, in the absence of evidence of dissent, yet all the testimony here shows that the husband never assented.   (2)   As to the change in deed, there is no evidence when it was done or who did it. Henry Toel, exrecorder, testified on the trial in 1892, that the writing looked the same as it did when filed for record in 1884, eight years before.   In the absence of testimony what are the presumptions?   *First.* Where a deed has been changed the presumption is

that it was done before delivery.  *Holton v. Kemp*, 81 Mo. 661.  *Second.*   The presumption is that all men obey the law and in the absence of proof, is it not as reasonable to suppose that the change was made with the consent of Tama Otis, as it is to infer that Merrill Otis committed forgery.   If the change was made with her consent, she would be estopped from claiming title and so would her heirs.  *Potter v. Adams*, 125 Mo. 118.   The children under the constant care and companionship of their mother to the day of her death never heard of her having title to this land.   They were informed and believed that their father owned the land.   Now would not she and her heirs be estopped from asserting a claim adverse to one who acted on a belief created in this way and to which she was party, for according to Busby's testimony Tama Otis knew in 1866 that her husband, Merrill Otis, was claiming the land, and having occupied it as a homestead, until he conveyed it to his children in 1880, would not Stringer and Tama Otis be barred by the statute of limitations?   (3)   As plaintiff, Sarah Rumsey, in addition to her advancements, received $464.10 under Merrill Otis' will, we asked in our answer that in the event that plaintiff was permitted to recover, as she was insolvent, as well as a nonresident, that her liability on her father's warranty be determined, and her recovery stayed until such damages were paid. Section 8839, R. S. 1889; *Foote v. Clark*, 102 Mo. 394. While it is true that if in process of administration it becomes necessary to take legacies to pay debts, general legacies shall first be taken, this requirement, by its terms, contemplates that specific legacies may also be taken, but their liability is secondary.   Yet when the money is gone, the administration closed, can plaintiff, while holding her legacy from Merrill Otis, compel us to give up this property, the title thereof

being assured to us by her ancestor, said Merrill Otis?
Is it the law that we must go out of court, hunt up the
general legatees, sue them, and if we fail to collect
from them by reason of insolvency, our right then
accrues to sue plaintiff, who is also execution proof.
If she wants the general legatees to pay damages she
may bring them in.   (4)  Appellees on the trial and
here insist that the admission of the deed, on behalf
of appellants, from Stringer, showing on its face a
conveyance to Merrill Otis as grantee, was error, being
introduced as it was by appellants for the purpose of
showing title in themselves by reason of the change in
the name of the grantee.   *Woods v. Hildebrand*, 46
Mo. 284.   The deed on its face puts title in appellee's
grantor.   If appellants desired to falsify said deed
they should have included a count in equity for that
purpose with their straight count in ejectment.   *Thompson v. Lyon*, 33 Mo. 219.

GANTT, P. J.—Less than three acres of land of the
yearly rental value of $1.50 an acre is the bone of this
contention.   Plaintiff sues her brother, the defendant
in ejectment, for an undivided one seventh of the south
half of the southwest quarter of the southwest quarter
of section 30, township 66, range 34, Nodaway county.

In 1864, Thomas Stringer, living in Illinois, owned
this land in Nodaway county, Missouri.   Merrill Otis
and Tama Otis were the father and mother of plaintiff
Sarah Rumsey.   Merrill Otis and his wife and children
were nonresidents.   Edward Otis, a brother of Merrill
Otis, lived in Nodaway county.   Benjamin Slaughter
was the resident agent in Nodaway county of Thomas
Stringer.

In October, 1864, Edward Otis purchased of
Stringer, through his agent Slaughter, the tract of
which the land in controversy was a part for his brother

Merrill Otis. When the deed came from Illinois it contained the name of Tama Otis, the wife of Merrill Otis, as grantee. The money was paid and the deed was delivered to Edward Otis. This deed was dated October 24, 1864, and was not recorded until April 18, 1884. Within three months Merrill Otis and his wife moved upon the land. Tama Otis died in 1877 intestate, and Merrill Otis died testate in 1889. Edward Otis and Stringer had also been dead for many years at the time of the trial.

It stands admitted that Reisin Otis, Sarah Ann Rumsey, the plaintiff, George Otis, Newton Otis, Absalom Otis, Mary F. Collins, and Edward Otis are the children and sole heirs at law of both Tama and Merrill Otis, deceased.

In 1879 and 1880 Merrill Otis conveyed to each of his said children an eighty acre tract of land and the defendant received as a part of his eighty the twenty acres in controversy here. The deed from Merrill Otis to defendant was a general warranty deed of date October 15, 1880. Plaintiff Sarah A. Rumsey also received a warranty deed from her father to eighty acres.

The evidence tended to prove that when Slaughter sent the memorandum to Stringer to make the deed he inclosed a slip directing how it should be made, and when it came with Tama Otis' name as grantee he called the attention of Edward Otis to it as a mistake and Edward merely said, "That's all right." Merrill Otis lived on the land and claimed it as his own until his wife's death and after her death until he conveyed it to his children. None of his children knew their mother's name was in the deed.

That Merrill Otis paid for the land there can hardly be a doubt, nor that he always claimed it until he conveyed it. After the death of both Tama and Merrill Otis and after his estate had been finally settled

the plaintiff commenced this action as the heir of her mother to one seventh.   When the deed from Stringer to Tama Otis was  recorded it bore evidence of having been changed.  The name of *Tama* had apparently been erased and that of *Merrill* inserted in lieu thereof, and being over twenty years old it was held by the recorder of deeds.

The plaintiff's claim  of title  is based upon the assumption that the deed was  delivered to her mother, whereas the trial court found  there had  never been a delivery of the deed to her mother,  either actual or constructive.

The declarations of  law asked by plaintiff and modified by the court indicate alike the  claim of plaintiff and the view of the court.   They are as follows:

The plaintiff requested the court to give the following declaration of law:

"No. 1.   If the court finds from the evidence that one Thomas Stringer was the owner of the land in controversy, and that he, through his agent, Slaughter, sold the same to Merrill Otis, and that Merrill Otis, either by himself or by instructions to his agent,  had the name of Tama Otis, his wife, inserted in the deed from Stringer as grantee, and the said name of Tama Otis was inserted in said deed as grantee, and said deed was by the agent of said Stringer delivered to the agent of Merrill Otis with intent to  pass title to said land and the purchase money therefor was then paid to the agent of said grantor—then and in that case there was a delivery of the deed and the title passed to said Tama Otis and the finding should be for plaintiff."

The court refused to give this declaration as prayed, but gave it after  modifying it  by words set out in parentheses as follows:

"No. 1. If the court finds from the evidence that one Thomas Stringer was the owner of the land in controversy and that he, through his agent, Slaughter, sold the same to Merrill Otis and that Merrill Otis either by himself or by instructions to his agent had the name of Tama Otis, his wife, inserted in the deed from Stringer as grantee and the said name of Tama Otis was inserted in said deed as grantee, and said deed was by the agent of said Stringer delivered to the agent of Merrill Otis with intent *(of Merrill Otis)* to pass title to said land *(to said Tama as a settlement, gift, or present to her)* and the purchase money therefor was then paid to the agent of said grantor—then and in that case there was a delivery of the deed and the title passed to said Tama Otis, and the finding should be for plaintiff."

To the action of the court in refusing to give said declaration as prayed, and to the giving it as modified, the plaintiffs at the time excepted.

The plaintiff further prayed the court to declare the law as follows:

"No. 2. If the court finds from the evidence that at the time of the purchase of the land in controversy from Stringer by Merrill Otis, said Merrill Otis was heavily in debt or had a large judgment against him, and to avoid having to pay the same or for the purpose of defeating his creditors in the collection of the debt he had the same deeded to his wife, Tama Otis, then and in that case the title to said land would pass to said Tama Otis from the time of delivery of said deed by the agent of Stringer notwithstanding the deed may not have been actually delivered to Tama Otis, but held by Merrill Otis."

The court refused to give said declaration as prayed, but gave it after its being modified by inserting words contained in parentheses as follows:

"No. 2. If the court finds from the evidence that at the time of the purchase of the land in controversy from Stringer by Merrill Otis said Merrill Otis was heavily in debt or had a large judgment against him and to avoid having to pay the same or for the purpose of defeating his creditors in the collection of the debt he had the same deeded to his wife, Tama Otis (*and the deed delivered to any one for her, with the consent of Merrill Otis*), then and in that case the title to said land would pass to said Tama Otis from the time of delivery of said deed by the agent of Stringer, notwithstanding the deed may not have been actually delivered to Tama Otis, but held by Merrill Otis."

To the action of the court in refusing to give instruction number 2 as prayed, and in giving it as modified, the plaintiff at the time excepted.

The plaintiff further prayed the court to instruct and declare the law as follows:

"No. 3. If the court sitting as a jury find from the evidence that the deed from Stringer to the land in question, was delivered to the agent of Merrill Otis with the name of Tama Otis inserted therein as grantee, and with intent to pass title of said land, then and in that case, the title passed to said Tama Otis notwithstanding said Merrill Otis may have paid the purchase money therefor and no subsequent change of the name of grantee in said deed would divest the grantee therein of title."

The court refused to give said declaration of law as prayed, but gave it after modifying the same by inserting words contained in parentheses as follows:

"No. 3. If the court, sitting as a jury finds from the evidence that the deed from Stringer to the land in question was delivered to the agent of Merrill Otis with the name of Tama Otis inserted therein as grantee, and with intent (*of Merrill Otis*) to pass title of said

land, then and in that case the title passed to said Tama Otis notwithstanding said Merrill Otis may have paid the purchase money therefor and no subsequent change of the name of the grantee in said deed would: divest the grantee therein of title.''

To the action of the court in refusing to give said declaration 3 as [prayed, and in giving it as modified, plaintiff then excepted.

The plaintiff further requested the court to declare the law as follows:

''No. 4. The court declares the law to be that if Merrill Otis bought the land in controversy and had the same deeded to his wife, so as to defeat the collection of a judgment against him, then the title passed to said Tama Otis, the grantee, notwithstanding said Merrill Otis may have paid the purchase money therefor and received and retained the deed and withheld the same from record until after his wife's death and no subsequent change of the name of the grantee would divest Tama Otis or her heirs of title to said land.''

The court refused to give said declaration as prayed but gave it modified by the additional words contained in parentheses as follows:

''No. 4. The court declares the law to be that if Merrill Otis bought the land in controversy and had the same deeded to his wife so as to defeat the collection of a judgment against him, then the title passed to said Tama Otis, the grantee, notwithstanding said Merrill Otis may have paid the purchase money therefor and received and retained the deed and withheld the same from record until after his wife's death, and no subsequent change of the name of grantee would divest said Tama Otis or her heirs of title to said land (*provided said deed was with the knowledge and consent of Merrill Otis delivered to anyone for said Tama Otis that she should take said land as her own*).''

To the action of the court in refusing instruction number 4 as prayed and giving it as modified, counsel for plaintiff then excepted.

I. As there were children, born of the marriage between Merrill and Tama Otis, capable of inheriting the land in dispute, and if the title thereto was vested in said Tama at all, she was seized of an estate of inheritance therein, and Merrill Otis was entitled as tenant by the curtesy to the possession of said land as long as he lived, even if it shall turn out he had no other title in said lands, the statute of limitations did not commence to run after the death of Tama Otis during the existence of this estate by the curtesy, and plaintiff is not barred thereby if it shall be determined that her mother owned the land.

II. Plaintiff insists that upon the admitted facts there was a delivery of the deed to Tama Otis in contemplation of law, notwithstanding there may have been no actual delivery thereof to her, but the deed during their marriage was held by Merrill Otis, her husband. The delivery of the deed to her was of course essential to transfer the title to her notwithstanding all the other formalities were perfect. *Younge v. Guilbeau*, 3 Wall. 636. But no particular form is necessary to effect a delivery. The delivery itself is only intended to evidence the purpose of the grantor to give effect to the instrument, and the law presumes much more in favor of a delivery in cases of voluntary settlements in favor of a wife, child, or near relative than it does in ordinary cases of bargain and sale between strangers. *Hamilton v. Armstrong*, 120 Mo. 597; *Crowder v. Searcy*, 103 Mo. 97.

In *Cannon v. Cannon*, 26 N. J. Eq. 316, the court says: "To make delivery of a deed, it is not necessary it should actually be handed over to the grantee, or to another person for him. It may be effected by words

without acts, or    *    *    *    by both acts and words. Indeed, it may be made though the deed remains in the custody of the grantor." *Sneathen v. Sneathen,* 104 Mo. 201; *Standiford v. Standiford,* 97 Mo. 233.

In *Tobin v. Bass,* 85 Mo. 654, it was held that "while the delivery of a deed is necessary to make it effectual in passing title" yet "when a deed to a minor child is absolute in form and beneficial in effect, and the father and grantor voluntarily causes the same to be recorded, acceptance by the grantee will be presumed, and such facts constitute, *prima facie,* a delivery."

When it appeared, then, that Thomas Stringer was the owner of this land and that, through Slaughter, Merrill Otis, the husband, purchased this land and directed the deed absolute in form to be made to his wife, and the grantor Stringer, with the intention of passing the title, made the deed as directed and delivered it to Edward Otis, the agent designated by Merrill Otis to receive it, it was *prima facie* a delivery to Tama Otis. The fact that this deed was afterward found in the possession of Merrill Otis, considering the relation of husband and wife, did not rebut the presumption of delivery to her; nor did his claim of land estop his wife, who only had a general legal title thereto, or her heirs, from afterward asserting title to it. That the deed was made to his wife by his direction is strengthened by the consideration that he was indebted at the time in Ohio.

The court erred in not declaring the law as prayed in plaintiff's declarations. It was not essential that there should have been an actual manual delivery of the deed into the hands of Tama Otis. As between her and her husband his intention was plain to vest the title in her, when he directed the deed made to her. The grantor Stringer conveyed his title absolutely and

without reservation to Tama Otis, and the legal effect of the direction by Merrill Otis to make the deed to his wife and the actual execution and delivery thereof by the grantor in accordance with those directions were not rebutted by the fact that there was no other evidence of delivery to her when Edward Otis, Tama Otis, and Merrill Otis were all dead; nor by the fact that Merrill Otis had access to the deed. We think the learned judge of the circuit court required more evidence of delivery than exacted by the law and decisions of this court.

Doubtless the circuit court was insensibly moved to this ruling by the apparent cupidity of the plaintiff and her brother Reisin. They came into court after having received their full share of their father's estate, and sought to deprive their brother of his share, which he received in ignorance of his mother's title thereto; but it would be a dangerous precedent to hold that a wife's title to her land could be divested by such evidence as was offered in this case to rebut the presumption of a delivery of a deed to her, or to require stronger proof of delivery to her after the death of all the parties.

Of course it needs no argument or authority to show that the subsequent mutilation of the deed by Merrill Otis before filing it for record did not have the effect of divesting the title once vested in her.

III.　But, notwithstanding the legal title to one seventh of this land descended to plaintiff, she is an heir at law and legatee of Merrill Otis, who warranted this land to the defendant. She is utterly insolvent. She has delayed bringing this suit until she had received a legacy of $464.10 over and above an advancement of eighty acres of land, and until all the estate of her father was distributed and final settlement made.

The question arises whether she should be allowed to recover this land until her liability, if any, on her father's warranty can be determined.

Having determined there was a delivery of the deed to Tama Otis, it necessarily follows there is a breach of Merrill Otis' warranty to defendant of this land. Plaintiff's claim and recovery of this land is a breach of her father's covenant of seizin and for further assurances. It was said by this court in *Foote v. Clark*, 102 Mo. 394: "While our statute abolishes lineal and collateral warranties and their incidents, still heirs and devisees of persons who have made any covenant are answerable upon such covenant to the extent of lands descended." R. S. 1845, p. 220; R. S. 1879, sec. 3944; R. S. 1889, sec. 8839.

In reply to this, plaintiff relies upon section 247, Revised Statutes, 1889, which provides: "If, after the payment of the legacies or distributions, it becomes necessary that the same, or any part thereof, be refunded for the payment of debts, the court, on application, shall apportion the same among the legatees or distributees, according to the amount received by them, except that specific legacies shall not be required to be refunded unless the residue be not sufficient to satisfy such debts."

A careful reading of this last section and the context in which it is found indicates that *the court* alluded to is the *probate court* in which the estate is being administered, and that the orders for refunding should be made prior to the final settlement of the estate, as in contemplation of law the estate must remain in administration until all debts are settled, and that section evidently means that if in the process of administration it becomes necessary to take legacies to pay debts, the general legacies shall be taken before resort can be had to special legacies; but it is evident that

even that section contemplates the sequestration of the special legacies also if the general be insufficient.

What attitude, then, is defendant left in if we permit an unconditional recovery of this land? All the legacies, both general and special, have been paid without notice of the breach of the covenants in the deed of plaintiff's ancestor Merrill Otis to the defendant. The legatees are not before the court. Must defendant surrender the land to plaintiff, bring his action for damages for breach of the covenants against the general legatees and after years of litigation possibly, if not probably, find them insolvent, and then at last be remitted to his action at law against plaintiff, who is both a nonresident and insolvent, after she has conveyed this land, the only fund out of which she could ever respond? We think not. It is entirely competent for the court, under the pleadings, and upon such a state of facts, to order that a judgment of recovery be stayed until defendant can bring his action to determine her liability as one of the devisees of Merrill Otis and *until his damages* for the breaches of said covenants *shall be paid.*

For the error in refusing plaintiff's declarations of law and in holding upon the uncontroverted facts that there was no delivery of the deed from Stringer to Tama Otis, the judgment is reversed, and cause remanded for a new trial in accordance with the views herein expressed. SHERWOOD and BURGESS, JJ., concur.